[Cite as *Cuyahoga Cty. Bar Assn. v. Kelley*, 105 Ohio St.3d 55, 2004-Ohio-7009.]

CUYAHOGA COUNTY BAR ASSOCIATION *v.* KELLEY.

[Cite as *Cuyahoga Cty. Bar Assn. v. Kelley*,

**105 Ohio St.3d 55, 2004-Ohio-7009.]**

*Attorneys at law — Misconduct — Indefinite suspension — Conduct adversely reflecting on fitness to practice law — Failure to carry adequate malpractice coverage — Failure to cooperate — Neglect of entrusted legal matter — Handling a legal matter without adequate preparation.*

(No. 2004-1009– Submitted September 15, 2004—Decided December 29, 2004.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 03-021.

————————————

**Per Curiam**.

**{¶ 1}** Respondent, Elliott Ray Kelley of Cleveland, Ohio, Attorney Registration No. 0009587, was admitted to the practice of law in Ohio in 1963. On December 4, 2003, in its third amended complaint, relator, Cuyahoga County Bar Association, charged respondent with violating the Code of Professional Responsibility while representing three different clients. Respondent answered on January 13, 2004. A panel of the Board of Commissioners on Grievances and Discipline heard the cause on February 6, 2004. Based on the exhibits and testimony, the panel made findings of fact, conclusions of law, and a recommendation.

**{¶ 2}** The first of the three matters before the panel began when respondent was hired by a friend to represent her in her capacity as the guardian of the estate of her sister, an alleged incompetent. In June 1999, a notice to file inventory was issued. When that inventory was not forthcoming, a motion to remove the guardian was filed.

**{¶ 3}** On September 22, 1999, an inventory was filed. Unfortunately, it was incomplete, omitting, among other things, several certificates of deposit in the guardianship's name constituting significantly greater assets than previously disclosed.

**{¶ 4}** A second motion to remove the guardian was filed in the spring of 2001 after a notice to file an account was ignored. Shortly thereafter, respondent moved to expend funds from the guardianship account for attorney fees, but only after he had already withdrawn $1,095 from the account for that purpose. That motion was eventually dismissed for want of prosecution after respondent failed to attend the hearing thereon, and no order was ever entered that authorized the payment of these fees.

**{¶ 5}** On June 29, 2001, the guardian was removed for failure to file an account. Later that year, the ward died, and in March 2002, a successor guardian was appointed. The successor guardian had considerable difficulty securing accurate and complete records from respondent. The successor eventually determined that significant estate assets had been omitted from the inventory filed by respondent and that approximately $15,000 of estate assets remained unaccounted for because of, among other reasons, respondent's failure to maintain complete records of the estate's affairs. The successor also concluded that the former guardian may have allowed the assets of the estate to be dissipated. Finally, the successor noted respondent's receipt of attorney fees from the guardianship account without prior authorization.

**{¶ 6}** Other irregularities were also unearthed during the investigation. Relator discovered that respondent had not registered with the Supreme Court or apprised the court of his correct address. Relator also learned that respondent had not carried malpractice insurance and had not informed his client of that fact. Relator also alleged that respondent had ignored its discovery requests and had failed to attend a scheduled deposition.

**{¶ 7}** Respondent tried to excuse his misconduct by attributing the deficient records to the guardian and to his efforts to characterize expenditures that directly benefited the guardian as allowable expenses. Respondent asserts that he provided all of the records he had and noted that he ultimately appeared for his deposition. He also stated that none of his errors were motivated by fraud or dishonesty and that he was just trying to help his clients the best way that he could.

**{¶ 8}** Relator alleged numerous disciplinary violations in the above matter. The panel dismissed four of them for lack of clear and convincing evidence. It did, however, find violations of DR 1-102(A)(6) (barring conduct adversely reflecting on fitness to practice law), 1-104(A) (requiring a lawyer to notify clients of failure to carry adequate malpractice coverage), and Gov.Bar R.V(4)(G) (requiring a lawyer to cooperate in grievance investigation).

**{¶ 9}** The second matter arose from respondent's representation of a husband and wife in a Chapter 7 bankruptcy proceeding. They first contacted respondent in October 2000 and formally retained him shortly thereafter.

**{¶ 10}** During the bankruptcy proceedings that ensued, it was discovered that in both the initial and the amended bankruptcy schedules, respondent had not declared numerous assets. The omissions eventually prompted the bankruptcy trustee to commence an adversary proceeding against the clients, both objecting to a discharge in bankruptcy and alleging a conspiracy to commit fraud. The clients eventually fired respondent and secured new counsel, but they claim that three years later, they are still experiencing the financial ramifications of respondent's mishandling of their case.

**{¶ 11}** The wife also alleged that respondent advised her to sign blank bankruptcy documents and told her to sign her husband's name as well. She testified that respondent told the couple that if questioned by the trustee, they

should aver that the signatures were genuine. Respondent vigorously denied these allegations.

{¶ 12} The panel dismissed these latter allegations for lack of clear and convincing evidence. It did, however, find that respondent had mishandled his clients' bankruptcy schedules to their detriment. Accordingly, the panel found violations of DR 1-102(A)(6), 6-101(A)(2) (prohibiting the handling of a legal matter without adequate preparation), and 6-101(A)(3) (prohibiting neglect of a legal matter). Again, respondent's lack of malpractice insurance and his failure to disclose that he was uninsured violated DR 1-104.

{¶ 13} The remaining counts stemmed from respondent's representation of a client in a personal injury matter. Respondent ultimately settled the claim but failed to pay a hospital bill even though funds had been set aside for payment of such expenses. These funds, moreover, were never deposited in a trust account but were instead placed in respondent's personal checking account. The hospital eventually undertook collection action against the client.

{¶ 14} As was the case in the guardianship matter, incomplete and delayed records hampered investigation. The panel found that while respondent's failure to cooperate was not necessarily intentional, it was neglectful and amounted to a violation of Gov.Bar R. V(4)(G). The panel also found violations of DR 1-102(A)(6), 6-101(A)(2) and (3), 7-101(A)(3) (barring conduct that prejudices or damages a client), 9-102(A) (requiring a lawyer to deposit client funds in a trust account), and 9-102(B)(4) (requiring a lawyer to return undistributed funds received in settlement of a claim).

{¶ 15} Other overall deficiencies were discovered at the panel hearing. Although respondent ultimately cured his lack of registration with the Supreme Court as required by Gov.Bar R. VI, he was, at that time, suspended from the practice of law because of his failure to meet the continuing legal education requirements of Gov.Bar R. X.

**{¶ 16}** In considering the appropriate penalty, the panel considered both aggravating and mitigating evidence. As to the former, the panel noted that respondent had already been suspended for two years for similar misconduct. See *Cleveland Bar Assn. v. Kelley* (1994), 71 Ohio St.3d 147, 642 N.E.2d 613. The panel also considered respondent's CLE suspension.

**{¶ 17}** In mitigation, the panel found respondent to be well-meaning and without malice or selfish motive. It also noted respondent's long-standing representation of clients who needed legal services but who did not qualify for pro bono representation. The panel also found that respondent indeed recognized the deficiencies in his practice habits. This finding, however, was tempered by the concern that respondent did not comprehend the seriousness of his failure to satisfy the rules governing the practice of law in Ohio or the consequences to his clients of his inadequate services.

**{¶ 18}** The panel concluded, "Respondent's clients would have been better served by other counsel, or even no counsel, than by the services rendered by Respondent. The Panel finds that the misconduct involved in these proceedings is likely to be repeated, and that the public, therefore, is at risk, so long as Respondent remains actively practicing law." The panel accordingly recommended that respondent be indefinitely suspended from the practice of law, with readmission contingent not only on the conditions of readmission imposed by Gov.Bar R. V but also upon respondent's successful completion of 12 hours of continuing legal education with respect to law office operations and the requirements of the Rules for the Government of the Bar and on the condition that for a period of two years following readmission, respondent be placed on probation under the supervision of one or more monitoring attorneys, pursuant to Gov.Bar R. V(9), to monitor respondent's practice.

**{¶ 19}** The board adopted the findings of fact, conclusions of law, and recommendation of the panel and additionally recommended that the cost of these

proceedings be taxed to the respondent. We, in turn, adopt the board's report in full. Respondent has committed serious misconduct. These incidents, moreover, are not isolated – respondent has already been severely sanctioned for similar violations. His history reinforces our concern that similar misconduct is very likely to continue if respondent is not suspended.

**{¶ 20}** Accordingly, respondent is hereby indefinitely suspended from the practice of law in Ohio with readmission contingent on the following conditions: (1) that he comply with all conditions of readmission imposed by Gov.Bar R. V and (2) that he successfully complete 12 hours of continuing legal education with respect to law office operations and the Rules for the Government of the Bar, in addition to the requirements set forth in Gov.Bar R. X(3)(G). If readmitted, for a period of two years following readmission, respondent shall be placed on probation under the supervision of one or more monitoring attorneys, pursuant to Gov.Bar R. V(9), to monitor his practice.

**{¶ 21}** Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

Ellen S. Mandell and Steven M. Ott, for relator.

Elliott Ray Kelley, pro se.

_____